IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARY LAWTON, individually and on behalf of all others similarly situated,<br>         Plaintiff,<br><br>    v.<br><br>BASIC RESEARCH, L.L.C., et al.,<br>         Defendants. | CIVIL NO. 10-6341(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

LESLIE LAMACCHIA
BAILEY PERRIN BAILEY
440 LOUISIANA
SUITE 2100
HOUSTON, TX 77002
     *Attorney for plaintiff*

FRANK R. EMMERICH
MARK EDWARD SEIBERLING
CONRAD O'BRIEN PC
1515 MARKET STREET
16TH FLOOR
PHILADELPHIA, PA 19102
     *Attorneys for defendants*

**HILLMAN,** District Judge

     This putative class action case concerns plaintiff's allegations that defendants engaged in fraudulent, deceptive, and misleading labeling and advertising of Zantrex-3, a dietary supplement that plaintiff contends is ineffective and not proven to cause rapid weight loss despite defendants' claims.  Plaintiff originally filed his case in New Jersey Superior Court, Atlantic County, and Defendants removed the matter to this Court pursuant to

28 U.S.C. § 1332(d)(2), the Class Action Fairness Act (CAFA). Pending before the Court is plaintiff's motion to remand.[1]  For the reasons expressed below, plaintiff's motion will be denied.

## BACKGROUND AND DISCUSSION

Plaintiff, Gary Lawton, claims that defendants, Basic Research, LLC, Zoller Laboratories, LLC, and Dennis W. Gay, CEO, President, and principal shareholder of Basic Research and Zoller,[2] violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et al., and breached express and implied warranties, as well as were unjustly enriched, through the marketing and sale of the dietary supplement, Zantrex-3, advertised to provide rapid weight loss. Plaintiff is seeking, on behalf of himself and others similarly situated, trebled compensatory damages, including the refund of the purchase price each member of the class paid for Zantrex-3, and punitive damages, among other relief.

---

[1]Also pending are defendants' motions to dismiss and for partial summary judgment.  Because a district court has an obligation to determine subject matter jurisdiction prior to considering the merits of a case, Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia, 657 F.2d 29, 36 (3d Cir. 1981), that issue must be addressed first prior to analyzing defendants' substantive motions.

[2]Two other individual defendants were named in the complaint: Daniel B. Mowrey and Mitchell T. Friedlander.  These defendants filed motions to dismiss plaintiff's claims against them for lack of personal jurisdiction.  The parties have since stipulated to the dismissal of these two defendants.  (See Docket No. 42.)  Dennis W. Gay also filed a motion to dismiss plaintiff's claims for lack of personal jurisdiction.  That motion is still pending.

2

Defendants removed plaintiff's case from New Jersey Superior Court, Atlantic County, to this Court, contending that this Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act (CAFA).  CAFA provides, in relevant part, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . (A) any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2).  Another jurisdictional requirement under CAFA is that the proposed class contains at least 100 members.  Id. § 1332(d)(6).

Plaintiff has moved to remand his case to state court where he originally filed it.  In plaintiff's motion to remand, he does not dispute that defendants have met the citizenship and number-of-class-members requirements of CAFA.  Plaintiff argues, however, that defendants have not demonstrated that his claims will exceed $5 million, and, therefore, his case should be remanded for lack of subject matter jurisdiction.  In further support of remand, plaintiff points out that he expressly states in his complaint that his claims do not exceed $5 million: "[T]here is no [federal court] jurisdiction under the Class Action Fairness Act of 2005 because the matter in controversy in this civil action does not exceed $5,000,000, exclusive of costs and interest."  (Compl. ¶ 5, Docket

No. 1-2.)[3]  Because defendants have not met their burden of proving to a legal certainty that plaintiff's claims meet the jurisdictional amount in controversy, and because plaintiff himself caps his recovery to below $5 million, plaintiff argues that this Court lacks jurisdiction over his case.

In opposition, defendants contend that despite plaintiff's valuation of his case, they provided sufficient evidence in their notice of removal, as well as supplemental declarations, that sales of Zantrex-3 in New Jersey during the time period covered by plaintiff's claims totaled over $6.5 million, and that with trebled damages, plaintiff's case could exceed $19.5 million.  Defendants further argue that plaintiff's "opinion" that the amount in controversy in the case will not exceed $5 million is overcome by their evidence that the amount in controversy could well exceed that amount.  Thus, defendants contend that they have debunked any finding that the case cannot exceed $5 million, and they have proven to a legal certainty that plaintiff's potential recovery can exceed $5 million.

The Third Circuit has squarely addressed this situation.  In

---

[3]Plaintiff also states in his complaint that there is no federal jurisdiction based on diversity of citizenship because the amount in controversy for plaintiff's claims does not exceed $75,000.  (Compl. ¶ 5, Docket No. 1-2.)  If defendants had removed this case on the basis of traditional federal diversity jurisdiction under 28 U.S.C. § 1332(a), defendants would have had to establish that at least one class member could recover in excess of $75,000.  See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549, 559 (2005).

4

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), the Third Circuit explained the two standards by which to analyze a motion to remand when the amount in controversy is in dispute. Where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum, the test espoused by Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392 (3d Cir. 2004) applies. Under Samuel-Bassett, the challenger to subject matter jurisdiction has to prove, to a legal certainty, that the amount in controversy cannot exceed the statutory threshold. See Frederico, 507 F.3d at 196. In contrast, where the complaint specifically avers that the amount sought is less than the jurisdictional minimum, the standard set forth by Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006) applies. Under Morgan, a defendant seeking removal must prove to a legal certainty that plaintiff can recover the jurisdictional amount. See Frederico, 507 F.3d at 196-97.

In this case, the Morgan test applies. Plaintiff has specifically limited the value of his case to below $5 million: "[T]here is no [federal court] jurisdiction under the Class Action Fairness Act of 2005 because the matter in controversy in this civil action does not exceed $5,000,000, exclusive of costs and interest." (Compl. ¶ 5, Docket No. 1-2.) Thus, it is defendants' obligation to prove to a legal certainty that plaintiff can recover

5

more than $5 million.[4]

In determining what defendants must show to prove to a legal certainty that plaintiff's claims can exceed $5 million, Morgan is instructive.  There, the district court remanded the action--which concerned a different nutritional supplement--to state court because the defendants had not demonstrated to a legal certainty that the potential recovery in the plaintiff's putative class action exceeded $5 million in order to secure CAFA jurisdiction.  Morgan v. Gay, 2006 WL 2265302, *5 (D.N.J. 2006).  The district court explained that despite the defendants' assertion that the plaintiff's demands for disgorgement of all profits from the sale of the supplement, as well as punitive and compensatory damages and attorneys' fees and costs, exceeded the $5 million mark, the defendants did not offer any factual support for this assertion.

---

[4] Defendants argue that the Morgan standard does not apply because that standard was created based on the plaintiff's assertion that "the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value," Morgan v. Gay, 471 F.3d 469, 471 (3d Cir. 2006), whereas here, plaintiff has simply stated, "the matter in controversy in this civil action does not exceed $5,000,000."  Defendants argue that plaintiff's wording does not expressly limit his case value to less than $5 million like the plaintiff did in Morgan.
The Court does not agree with defendants' semantical argument.  Moreover, as explained by plaintiff, the language he used in his complaint mirrors the language used in CAFA: "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . ."  28 U.S.C. § 1332(d)(2).  The dispositive factor in Morgan was the fact that plaintiff made a statement regarding the potential value of his case--it was not simply that the plaintiff used the words "shall not."

Morgan, 2006 WL 2265302 at *5.  The district court pointed out that the defendants "do not provide, for example, statistical sales information regarding the amount of [the supplement] sold in New Jersey, the cost of [the supplement], what sort of punitive damages that could be found when no harmful side effects are being alleged, or how much profit was made in New Jersey sales of [the supplement] which would be eligible for disgorgement."  Id.  The court concluded, "Without this information, all that remains from Defendants' submissions are their unsubstantiated assertions."  Id.

On appeal, the Third Circuit agreed with the district court.[5]  First, the court noted that the "Supreme Court has long held that plaintiffs may limit their claims to avoid federal subject matter jurisdiction," and that "CAFA does not change the proposition that the plaintiff is the master of her own claim."  Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006), cert. denied, 552 U.S. 940 (2007).  The circuit court then observed, "If this court had all the information available to make such a determination, our conclusion here might be that the plaintiff's claim in all likelihood exceeds $5 million."  Id. at 475.  The court found, however, that "three inconclusive assumptions that the defendants rely upon to meet" their burden mandated remand: (1) the defendants did not state what

---

[5]Although a district court's remand order is generally not appealable, the Third Circuit had jurisdiction to consider the remand order in Morgan because it concerned a removal of a class action.  See 28 U.S.C. § 1453(c).

7

sort of punitive damages could be found when no harmful side effects are being alleged; (2) the defendants did not provide information about how much profit from New Jersey sales of the supplement would be eligible for disgorgement, and the plaintiff has explicitly limited her claim to disgorgement as a restitutionary remedy, so that the type of disgorgement of profits sought by the plaintiff could not extend any further than profits derived directly from sales of the supplement to the New Jersey class members; and (3) with respect to compensatory damages, the defendants did not provide "statistical sales information regarding the amount of [the supplement] sold in New Jersey," and the defendants did not state the actual cost of the supplement.  Id. at 475-76.

In this case, it is apparent that defendants have attempted to remedy the dearth of information to support CAFA jurisdiction that doomed the defendants in Morgan.[6]  To address the value of plaintiff's putative class claims, which concern thousands of New Jersey citizens who have purchased Zantrex-3, defendants attached a declaration of Steven S. Dickert, CFO of Zoller and Basic Research, to their notice of removal.  Dickert attests that the retail sales of Zantrex-3 in New Jersey during the time period covered by plaintiff's complaint totaled $6.5 million.  (Ex. C, Docket No. 1-

---

[6]Coincidentally, two of the defendants in Morgan are defendants in this case:  Dennis W. Gay and Basic Research, LLC.

8

3.) This figure, which defendants argue already meets the jurisdictional minimum of CAFA, further exceeds the amount in controversy requirement when it is trebled pursuant to the NJCFA. Adding to that number the potential for punitive damages, which plaintiff demands, as well as attorneys' fees, which may be considered in determining the CAFA jurisdictional threshold, see Frederico v. Home Depot, 507 F.3d 188, 195 (3d Cir. 2007), defendants contend that the amount in controversy could exceed $42 million.

In his motion to remand, plaintiff challenges defendants' reliance upon Dickert's certification based on the same three reasons pointed out in Morgan. Plaintiff argues (1) the certification does not show how punitive damages can be assessed without claims by plaintiff regarding harmful side effects; (2) the sales figure of $6.5 million does not show what profit would be eligible for disgorgement; (3) defendants do not provide any statistical information to support Dickert's unsubstantiated, conclusory statement regarding the $6.5 million figure; and (4) defendants do not provide information regarding the actual cost of Zantrex-3 or the exact number of New Jersey purchasers. Plaintiff thus argues that these flaws are fatal to defendants' burden of showing to a legal certainty that his claim will exceed $5 million.

In response, defendants filed under seal more specific sales data. (See Docket No. 34.) Dickert supplemented his original

9

certification with a detailed explanation of the sales data. In that certification, Dickert explained three categories of sales data: Category 1 - actual retail sales figures reported for sales in New Jersey during the relevant time period (October 20, 2004 through October 20, 2010); Category 2 - estimated retail sales figures for New Jersey based upon actual national reported retail sales figures; Category 3 - estimated retail sales figures for actual shipments to that retailer. The certification also explains how the different retailers report their sales data, and how this affects defendants' calculations. For example, several of the national chain retailers that have locations in New Jersey only provide national sales figures. Thus, defendants cannot obtain actual New Jersey-specific retail sales data for several major retailers, and instead must make allocation estimations.

In reply, plaintiff challenges this data, arguing that the actual sales data is the only data to be credited, and the remainder of the allocation estimations should be ignored. Plaintiff points out that the actual data figure does not meet $5 million, and that the figure does not account for non-New Jersey residents who purchased Zantrex-3 in a New Jersey store. Plaintiff therefore argues that despite defendants' efforts, they have failed to meet their burden of proving to a legal certainty that the amount in controversy of his case exceeds $5 million.

The Court recognizes that it is plaintiff's right to limit the

10

value of his claim to prevent his case from being removed from his choice of forum. See Frederico v. Home Depot, 507 F.3d 188, 195 (3d Cir. 2007) (explaining that it is "well-established" that "the plaintiff is the master of her own claim and thus may limit his claims to avoid federal subject matter jurisdiction"). Federal court, however, is a forum available to defendants despite plaintiff's choice, as long as defendants have proven that plaintiff's case meets the jurisdictional requirements of CAFA to a legal certainty. Defendants have done so here.

Setting aside defendants' estimated sales data, and not factoring in the possibility of punitive damages,[7] defendants have

---

[7] The Court questions whether a separate assessment of punitive damages is even available to plaintiff in this case. Plaintiff has alleged counts for a violation of the NJCFA, for breach of implied and express warranties, and for unjust enrichment. It appears that the NJCFA's provision for an award of trebled damages serves the punitive penalty under the Act. See Lettenmaier v. Lube Connection, Inc., 741 A.2d 591, 593-94 (N.J. 1999) (citation omitted) (explaining that one purpose of the CFA is "to punish the wrongdoer through the award of treble damages"). It also appears that punitive damages are only otherwise available where a plaintiff has pleaded common law fraud, which plaintiff here has not specifically alleged. See Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp., 839 A.2d 942, 968 (N.J. Super. Ct. Law Div. 2003) (citing Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997)) (explaining that common law punitive damages or damages under the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17, are not expressly provided for by the NJCFA and are only allowed in cases of common law fraud, a cause of action not pleaded by plaintiff's complaint). Similarly, courts have routinely held that "[w]here the essence of a cause of action is limited to a breach of [a commercial] contract, punitive damages are not appropriate regardless of the nature of the conduct constituting the breach." Kurnik v. Cooper Health System, 2008 WL 2829963, *15 (N.J. Super. App. Div. 2008) (citation omitted). Thus, plaintiff's breach of warranty and

still concretely proven that the amount in controversy in plaintiff's putative class action exceeds $5 million. As a part of his claim, plaintiff requests that he and his class members be refunded the purchase price of Zantrex-3. Defendants have provided actual data of sales of Zantrex-3 in New Jersey that, when trebled, is just shy of the $5 million mark.[8] See Lettenmaier v. Lube Connection, Inc., 741 A.2d 591, 593 (N.J. 1999) (citation omitted) (explaining that two purposes of the NJCFA are to compensate the victim for his or her actual loss and to punish the wrongdoer through the award of treble damages).

The figure then easily surpasses $5 million when attorneys' fees are added. In any action brought for violations of the NJCFA, "the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19. The counsel fee provision in the NJCFA serves "to attract competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to the

---

unjust enrichment claims also do not support any finding of punitive damages. Because, however, the Court is not factoring punitive damages to determine the $5 million jurisdictional threshold, the Court makes not finding at this time about whether plaintiff's request for punitive damages is viable.

[8]Because the Court has allowed defendants to file Dickert's declaration containing "highly sensitive and proprietary business information" under seal, and that information is also subject to a confidentiality agreement between the parties, (see Docket Nos. 32 at 3-4 and 50), the Court will refrain from revealing the precise numbers.

individual." Lettenmaier, 741 A.2d at 593 (citation omitted). Attorneys' fees must be considered in calculating the amount in controversy requirement under CAFA, Frederico, 507 F.3d 188 at 199 (citing Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997)), and "[f]ees could be as much as thirty percent of the judgment," id. (citing In re Rite Aid Corp. Securities Litigation, 396 F.3d 294, 303 (3d Cir. 2005) (noting study done by the Federal Judicial Center that found a median percentage recovery range of 27-30% for all class actions resolved or settled over a four-year period)); cf. In re Cendant Corp. Prides Litig., 243 F.3d 722, 730 (3d Cir. 2001) (citation omitted) ("[The] divergence in [class members' and class counsel's] financial incentives . . . creates the 'danger . . . that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees.'"). Thus, even if counsel fees totaled only three percent of the trebled damages, those fees plus the damages based on the actual retail sales data readily exceed the $5 million threshold.[9]

---

[9]The Court acknowledges plaintiff's argument that it cannot be certain whether all the purchases of Zantrex-3 made at New Jersey stores were by New Jersey residents.  Taking this observation as true, the Court must therefore reduce the actual retail sales figure by the number of non-New Jersey-resident purchasers.  Plaintiff, however, does not provide any guidance on how to calculate that reduction.  Indeed, although plaintiff claims that the class consists of "thousands of persons" who are New Jersey citizens or residents who purchased Zantrex-3 at New Jersey stores, the exact composition of the class can only be "ascertained through Defendants' records and adequate

**CONCLUSION**

Defendants have proven to a legal certainty that the amount in controversy of plaintiff's case exceeds $5 million. Therefore, this Court may properly exercise subject matter jurisdiction over plaintiff's case pursuant to CAFA. Accordingly, plaintiff's

---

investigation and discovery." (Compl. ¶ 45.) Determining subject matter jurisdiction under CAFA cannot wait, however, until extensive discovery as to the composition of the class members is complete. Instead, the subject matter jurisdiction analysis must be performed with the information provided in the complaint, notice of removal, and "jurisdictional facts contained in later-filed affidavits as amendments to the removal petition where . . . those facts merely clarify (or correct technical deficiencies in) the allegations already contained in the original notice." USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 206 n.12 (3d Cr. 2003); see also Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 512 (E.D. Pa. 2007) (quoting Massachusetts School of Law at Andover, Inc. v. American Bar Association, 107 F.3d 1026, 1042 (3d Cir. 1997) (internal quotations omitted)) (in a CAFA case, explaining that when subject matter jurisdiction is called into doubt, "jurisdictional discovery should be allowed unless the plaintiff's claim is clearly frivolous").

The actual retail sales figure provided by defendants does not include sales for Rite Aid or Target stores, as those stores did not provide defendants with geographically specific sales figures. It also does not include intervals when the other retailers did not provide geographically specific data. (Dickert Cert. at 4-5.) These estimated figures account for the remaining New Jersey sales that defendants claim total $6.5 million in retail sales during the relevant time period. Although the Court did not consider these estimated sales figures in determining that the amount in controversy at stake in plaintiff's case exceeds $5 million, it can be reasonably presumed that these sales exceed any off-set by purchases made by non-New Jersey residents. Thus, the fact that out-of-state residents may have purchased Zantrex-3 in New Jersey stores does not affect the finding that the amount in controversy at stake in plaintiff's case exceeds $5 million.

motion for remand must be denied.[10]

An appropriate order will be entered.


Date: <u>March 31, 2011</u>　　　　　　　　　　　　<u>s/ Noel L. Hillman</u>

At Camden, New Jersey　　　　　　　　　　　　NOEL L. HILLMAN, U.S.D.J.

---

[10]Defendants have also asked that plaintiff reimburse them for their attorneys' fees and costs expended in opposing plaintiff's motion for remand. Defendants have not articulated any basis to impose such a sanction onto plaintiff. To the contrary, had plaintiff's motion been successful, he may have been entitled to attorneys' fees and costs. See 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").

Defendants, as the parties who removed plaintiff's case to this Court, have the burden of establishing subject matter jurisdiction. Plaintiff, who explicitly valued his claims to less than CAFA's jurisdictional minimum, filed a well-supported motion in attempt to challenge defendants' valuation of his claims and the removal of his case from his chosen forum. No sanctions are remotely warranted for plaintiff's motion.

Relatedly, the Court notes that if plaintiff's case had been remanded, plaintiff's recovery would have been limited by his less-than-$5 million valuation of his case. See Morgan v. Gay, 471 F.3d 469, 477-78 (3d Cir. 2006) ("We do caution . . . that the plaintiffs in state court should not be permitted to ostensibly limit their damages to avoid federal court only to receive an award in excess of the federal amount in controversy requirement."). Now, however, that defendants have proven to a legal certainty that plaintiff's case is worth more than $5 million, plaintiff's potential recovery is no longer constrained by that figure.